NEIDLINGER et al. v. YOOST.

(Circuit Court of Appeals, Second Circuit. January 5, 1900.)

No. 68.

1. APPEAL—REVIEW—RULING ON MOTION FOR NEW TRIAL.

An order denying a motion for new trial is not reviewable by writ of error in the federal courts.

2. MASTER AND SERVANT—ACTION FOR INJURY TO SERVANT—EVIDENCE.

In an action by a servant against the master to recover for a personal injury caused by his clothing being caught in machinery while in the performance of a duty directed by the master, it is not error to permit an engineer, who was familiar with the machinery, and who reached plaintiff immediately after the injury, to testify as to the probable manner in which the accident occurred.

In Error to the Circuit Court of the United States for the Southern District of New York.

This is a writ of error to review a judgment of the circuit court, Southern district of New York, entered upon the verdict of a jury awarding to defendant in error, who was plaintiff below, the sum of $5,000 damages for personal injuries. The facts sufficiently appear in the opinion.

Eugene L. Richards, for plaintiffs in error.
William P. Maloney, for defendant in error.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The defendants, who are plaintiffs in error, owned and operated a malt house, and the plaintiff was in their employ; his usual duties being the stirring, straining, and turning of malt. He was at work in the cellar, in the larger or east room, which contained vats, and two sets of apparatus known as "conveyors." This conveyor was a wooden box about 18 inches square, extending the length of the room, 6 feet 6½ inches from the floor, having suspended within it a shaft wound with a spiral groove, which by its revolutions transferred the grain from one end of the room to the other. On the top of the box, at intervals of from 8 to 12 feet, were holes for oiling the shaft of the conveyor where it revolved through hangers from the top of the box. All these holes for oiling were in the large, east room, where plaintiff was regularly employed. The conveyor, with its boxing, ran through a partition wall into the adjoining or machinery room. The box projected a little way into this room, and the shaft continued on for about 8 feet from the wall, until it engaged, by a gear wheel, with gear wheels on the main shaft, which was driven by the engine. There were no holes for oiling in so much of the conveyor box as projected into this room, but the place of engagement of the gear wheels on the conveyor shaft with those on the main shaft required frequent oiling. On the day of the accident the plaintiff was engaged in his usual occupation in the large, east room, when the superintendent directed him "to oil the conveyor." He thereupon got an oil can, a lamp from the engine room, and a stepladder; and, commencing at the end of the conveyor furthest from the west room, containing the machinery, he placed the ladder under, and poured the oil into the oiling places on the top of, the conveyor box. Having poured oil into all these places, he proceeded to the machinery room, and was about to oil at the end of the conveyor shaft where it engaged with the main shaft, when in some way his clothing was caught by the moving machinery, and he was seriously injured. There was evidence that it was rather dark in that part of the cellar. The theory of the action was that plaintiff was instructed to perform a service outside of the line of his duty, which exposed him to a danger from the machinery to which his ordinary avocations would not expose him, and that he was directed to do this without proper warning and instructions. His testimony and that of his principal witness, the engineer, tended to support this theory. The fact that no instructions or warnings were given to him is not disputed; the contention of the superintendent being that he did not expect he would go to the west room, and that he had told him before not to oil the wheels. No warnings or instructions were needed for oiling in the east room. There it was a perfectly safe operation.

The first point argued upon this review is that the verdict should have been set aside, and new trial ordered, on the ground that the

99 F.—16

verdict was against the weight of evidence. This need not be discussed. Orders denying motions for new trial are not reviewable by writ of error in the federal courts.

The second point assigns error in the trial judge in denying a motion to direct a verdict for the defendant at the close of the case. The substance of this is the contention that the direction given to plaintiff, viz. "Oil the conveyor," could not fairly be construed by him as a direction to oil elsewhere than in the east room. What that direction implied was a question of fact, to be determined upon a consideration of all the evidence, there being a sharp conflict between some of the witnesses. The jury were fully and properly charged on that branch of the case, and their finding must be taken as conclusive. It would have been error in the trial judge to have withdrawn that question from the jury, in view of the circumstance that the engineer, presumably the man best informed as to nomenclature of the mechanical apparatus, refers to the conveyor as extending to the place where it came into connection with the wheel on the shaft.

The proposition next advanced, that plaintiff cannot recover because he cannot point out the precise screw or cog or moving part which caught him, is wholly without merit.

The question of contributory negligence was fairly for the jury, especially in view of the testimony of the engineer as to the difficulty which would be encountered by an inexperienced man undertaking to oil this particular part of the apparatus. The engineer testified that he protested to the superintendent against the proposed assignment of plaintiff to do the oiling, on the ground of his inexperience.

We see no error in allowing the engineer, who was familiar with the minute details of the machinery, and who came almost instantly after the catastrophe, to testify, from his knowledge of the machinery and the situation in which he found the plaintiff, "what there was on the shaft that could have caught him." The judgment of the circuit court is affirmed.